**PELTON GRAHAM** LLC

ADVOCATES FOR JUSTICE

Brent E. Pelton, Esq.

April 15, 2022

Pelton@PeltonGraham.com

**VIA ECF**

Hon. Robert M. Levy, U.S.M.J.
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re:**   *Guinea Chavez, et al. v. Good Food for Less, LLC, et al.,*
         **No. 20-cv-4111 (ARR)(RML)**

Dear Judge Levy:

This office represents named plaintiffs Pedro Guinea Chavez and Miguel Ernesto Guinea Vasquez (the "Named Plaintiffs") and opt-in Plaintiffs Antonio Agapito Guinea Garcia, Hector Victor Guinea Velasquez, Jose Mauro Guinea Velasquez, Pablo Gregorio Guinea Chavez, and Carlos Obispo Guinea Chavez (the "Opt-in Plaintiffs" and, with the Named Plaintiff, "Plaintiffs"). We write, jointly with counsel for Good Food for Less Supermarket, Foodsaver New York, Inc., Allan Tucker and Orin Arthur Tucker (altogether, the "Defendants"), pursuant to the March 15, 2022 Order of the Court and the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). Counsel for the parties respectfully submit that the negotiated Settlement Agreement (attached as **Exhibit A** to the Affidavit of Brent E. Pelton, Esq.) constitutes a fair and reasonable compromise of this matter which should be approved by the Court.

**I.       Procedural History and Plaintiffs' Allegations**

On September 2, 2020, the Named Plaintiffs filed the Class & Collective Action Complaint against Defendants, alleging violations of the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 190 *et seq.* & 650 *et seq.* (Dkt. No. 1 (the "Complaint")). Defendants filed their Answer to the Complaint on November 25, 2020, denying all material allegations. (Dkt. No. 13).

At the initial conference, held on January 11, 2021, the Court set discovery deadlines and discussed matters including mediation and a 216(b) collective motion. (*See* Minute Entry dated Jan. 11, 2021). Subsequent conferences focused primarily on advancing settlement discussions. (*See* Minute Entries dated June 15, 2021, Sept. 14, 2021, Oct. 25, 2021). At the October 25, 2021 conference, the Court ordered Plaintiffs to create and exchange a damages analysis. (*See* Minute Entry dated Oct. 25, 2021). Since the filing of the Complaint, five (5) individuals opted to join the Action. (*See* Dkt. Nos. 18- 21, 23).

**New York**: 111 Broadway, Suite 1503, New York, NY 10006  Tel. 212-385-9700  Fax 212-385-0800
**San Francisco**: 456 Montgomery Street, 18th Fl., San Francisco, CA 94104  Tel. 415-437-9100  Fax 212-385-0800

www.PeltonGraham.com

Hon. Robert M. Levy
FLSA Settlement Fairness Letter
Page **2** of **6**

The parties executed a confidentiality agreement, which was so-ordered by the Court (Dkt. No. 17), and exchanged discovery including initial disclosures and documents, specifically certain clock-in and clock-out records and payroll records in Defendants' possession. (Pelton Aff. ¶ 8). Plaintiffs also exchanged damages calculations, which were updated as additional plaintiffs joined the action and as Defendants provided records. (*Id.* ¶ 9).

Throughout the pendency of the litigation, the parties participated in informal and formal settlement negotiations pursuant to Court orders. (Pelton Aff. ¶ 10). On January 7, 2022, the parties reached a preliminary agreement to resolve the Action, and on January 10, 2022, Plaintiffs reported that the parties had reached a settlement and were working on finalizing the terms and drafting an agreement. (Dkt. No. 24). Over the next several weeks, the parties finalized the terms of the settlement and drafted and executed the Settlement Agreement attached hereto. (Pelton Aff. ¶ 10). As per the Declaration of Belinda Herazo, attached hereto as **Exhibit B**, as well as the Settlement Agreement, the Settlement Agreement has been translated into Spanish for Plaintiffs. (*Id.*)

## II. The Settlement Accounts for Litigation Risk

Plaintiffs worked as grocery store employees for Defendants at their supermarket located in Brooklyn, New York. Plaintiffs allege that they were paid either flat weekly rates or straight-time hourly rates that did not include overtime premiums and often fell below the minimum wage. In addition, Plaintiffs allege that their wages were typically missing hours as a result of off-the-clock time including required pre- and post-shift duties and Defendants' practice of consistently rounding time their hours clocked. Plaintiffs also allege that Defendants failed to provide them with wage notices or wage statements that complied with the requirements of the NYLL.

Throughout the litigation, the parties have disputed key issues of fact and law regarding Plaintiffs' hours worked and wages paid. Plaintiffs contend that Defendants' time records consistently show missing wages, that the records did not account for off-the-clock time, and that, for several Plaintiffs, they worked beyond the periods set forth in the records produced by Defendants. Two of the Plaintiffs who are current employees of Defendants also allege that their hours were reduced since they began participating in this lawsuit.

While Plaintiffs believe that a factfinder would credit their testimony over the Defendants, Plaintiffs recognize that the existing time and pay records could potentially limit the amount of damages Plaintiffs could recover at trial regarding their minimum wage, overtime and spread-of-hours claims if a factfinder credited Defendants' testimony and records in their entirety

Plaintiffs created an initial damages analysis as to the Named Plaintiffs, which was updated with the addition of the Opt-in Plaintiffs. Upon receipt of Defendants' records, Plaintiffs further revised the damages analysis in preparation for the mediation. Plaintiffs' most recent damages analysis calculated $96,695.58 in unpaid wage damages, consisting of $43,169.06 in unpaid minimum wage and $53,526.51 in unpaid overtime premiums. Plaintiffs further calculated $96,695.58 in liquidated damages, $70,000.00 in wage notice and wage statement damages, and $14,017.30 in interest as of January 7, 2022 for a grand total of $277,408.45. (Pelton Aff. ¶ 9)

www.PeltonGraham.com

Hon. Robert M. Levy
FLSA Settlement Fairness Letter
Page **3** of **6**

Although there is a possibility that Plaintiffs could recover higher damages if the case proceeded to trial, there is also the possibility that they could receive much lower damages, or nothing at all. As mentioned above, the Parties have several disputes as to the facts and law of Plaintiffs' claims and Defendants' liability, and it is extremely likely that Defendants would be unable to pay a higher judgment. Accordingly, Plaintiffs prefer to settle now, on an individual basis, for an amount that they would be guaranteed to receive under the terms of the settlement.

The parties believe that the settlement amount (i.e., $140,000.00) is a fair recovery based on the risks associated with establishing Defendants' liability and the calculated damages as well as the risks associated with proceeding to trial. In this instance, the settlement amount exceeds Plaintiffs' total unpaid wages calculations and represents approximately 50% of Plaintiffs' maximum damages calculations.

### III.    Settlement Terms

As set forth in the attached Settlement Agreement, the parties have agreed to settle this action for a total settlement amount of $140,000.00 (the "Settlement Amount"). Of the Settlement Amount, $47,185.00 is payable to Plaintiffs' counsel (consisting of $777.50 in expense reimbursements and $46,407.50 in attorneys' fees). The remaining $92,815.00 is payable directly to Plaintiffs (the "Net Settlement Amount"). Payment is to be made in a single allocation within fifteen (15) days of Court approval of the Settlement.

Keeping in line with the trend in this Circuit following *Cheeks*, the parties have agreed to a narrow release that is expressly limited to wage and hour claims that arose on or before the date each Plaintiff executed the agreement. The parties also did not include a confidentiality provision and have specifically included language in the Agreement making it clear that nothing in the Agreement precludes the parties from truthfully communicating their experiences concerning the Action or Settlement.

The agreement includes a mutual non-disparagement provision between Plaintiffs and Defendants. The parties recognize that Courts have held that broad one-sided non-disparagement provisions "can be contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can then use that information to vindicate their statutory rights." *Gaspar v. Pers. Touch Moving, Inc.*, No. 13 Civ. 8187 (AJN), 2015 U.S. Dist. LEXIS 162243, *3 (S.D.N.Y. Dec. 3, 2015). However, not every non-disparagement clause in a FLSA settlement is *per se* objectionable. *Santos v. Sofa Dr., Inc.,* No. 20-CV-9349 (JLC), 2021 U.S. Dist. LEXIS 221402 at *4, 2021 WL 5316405, at *2 (S.D.N.Y. Nov. 16, 2021). Here, the non-disparagement clause contained in this agreement is permissible for two reasons:

1) Initially, the non-disparagement provision is mutual and binds Plaintiffs and Defendants. Following *Cheeks*, Courts have approved settlements containing mutual non-disparagement clauses. *See Sadana v. Park Li, Ltd.,* No. 15-CV-8772, 2015 U.S. Dist. LEXIS 19122, at *2-3 (S.D.N.Y. Feb. 17, 2016) (approving the inclusion of a

Hon. Robert M. Levy
FLSA Settlement Fairness Letter
Page **4** of **6**

mutual non-disparagement clause in a FLSA settlement agreement); *Caprile v. Harabel*, No. 14-CV-6386, 2015 U.S. Dist. LEXIS 127332 at *3 (S.D.N.Y. Sept. 17, 2015) (post *Cheeks* decision approving mutual non-disparagement clause but rejecting the inclusion of a confidentiality provision).

2) Moreover, in recognition of the public policy interest favoring the disclosure of information relating to this action, the non-disparagement clause contains a "carve-out" provision permitting the Parties to make truthful statements about their experience in this litigation. Courts have held that such a "carve-out" provision provides an equitable balance between Plaintiffs' rights under the FLSA, and Defendants' interest in preventing the dissemination of defamatory statements. *See Cionca v. Interactive Realty LLC*, No. 15-CV-05123 (BCM), 2016 U.S. Dist. LEXIS 77372 at *8 (S.D.N.Y. July 10, 2016) (a clause which bars a plaintiff from making negative statements about a defendant "must include a carve-out for truthful statements about [a plaintiff's] experience in litigating [her] case."); *Lopez v. Poko-St. Anns L.P.,* No. 15-CV-4980 (BCM), 2016 U.S. Dist. LEXIS 46862 at fn. 1 (S.D.N.Y. April 4, 2016) (approving bilateral non-disparagement clause containing a "carve-out" provision for truthful statements); *Panganiban v. Medex Diagnostic & Treatment Ctr. LLC,* No. 15-CV-2588 (AMD)(LB), 2016 U.S. DIST LEXIS 29158 at * 6 (E.D.N.Y. Mar. 7, 2016) (approving reciprocal non-disparagement clause with a "carve out" for truthful statements about [plaintiff's] experience litigating the FLSA action); *Cortes v. New Creators, Inc.*, No. 15 Civ. 5680, 2016 U.S. Dist. LEXIS 79757, *4 (S.D.N.Y. June 20, 2016) (approving non-disparagement clause that "includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case").

The mutual non-disparagement clause is bolstered by additional provisions that permit either party to commence an action in the event of a breach of the agreement and to obtain reasonable attorneys' fees in the event that they prevail.

## IV.    Plaintiffs' Attorney's Fees and Expenses

As set forth in the Affidavit of Brent E. Pelton, Esq., as of April 15, 2022, Plaintiffs' counsel has spent more than 122 hours in prosecuting and settling this matter, resulting in a lodestar of $34,388.33. *See* Pelton Aff. Ex. C. Plaintiffs' counsel has spent $777.50 in actual litigation costs. *Id.* at Ex. D. The portion of the settlement amount that Plaintiffs seek as attorneys' fees (i.e., $46,407.50) represents one-third (1/3) of the settlement amount, after subtracting the actual litigation costs, which represents a modest 1.3 times lodestar amount and is consistent with what was agreed upon between the Plaintiffs and their counsel in their retainer agreements.

The hourly billing rates utilized by Plaintiffs' counsel in calculating the lodestar have been approved in connection with recent wage and hour default judgments in the Eastern and Southern Districts of New York. *See Guinea v. Garrido Food Corp.*, No. 19-CV-5860 (BMC), 2020 U.S. Dist. LEXIS 5476, at *4-5 (E.D.N.Y. Jan. 11, 2020) (rates of "$350-$450 per hour for partner time, $250-$300 per hour for associate time, and $125-$175 per hour for paralegal time…are

www.PeltonGraham.com

Hon. Robert M. Levy
FLSA Settlement Fairness Letter
Page **5** of **6**

reasonable and consistent with rates allowed in this district."); *Campos v. BKUK 3 Corp.*, No. 18-cv-4036, Dkt. No. 156 (S.D.N.Y. Aug. 10, 2021) (discussing and approving Pelton Graham's attorney and paralegal rates). Accordingly, Plaintiffs' counsel submits that the attorney's fees component of the settlement is fair and reasonable.

**V.      The Parties Believe that the Settlement Is Fair and Reasonable**

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, courts recognize a "strong presumption in favor of finding a settlement fair in cases like this one brought under the… FLSA" as the courts "are not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Santos*, 2021 U.S. Dist. LEXIS 221402, at *1 (internal citations omitted). Moreover, "court approval of an FLSA settlement is appropriate when the settlement is reached as a result of contested litigation to resolve *bona fide* disputes." *Payano v. 1652 Popham Assocs., LLC*, No. 17-cv-9983, 2019 U.S. Dist. LEXIS 19375, at *3 (S.D.N.Y. Feb. 6, 2019) (internal quotations omitted) (noting that court oversaw extended settlement negotiations); *see also In re Penthouse Executive Club Compensation Litig.*, No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement).  In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-cv-86, 2008 U.S. Dist. LEXIS 20786 at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food*, 679 F.2d at 1354).  Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, No. 13-cv-6266, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, there is no question that the settlement did not come about because of "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-length negotiations, including discussions and exchange of damages and documents that took place during the pendency of this litigation, approximately one and one-half (1.5) years. The parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. The negotiated settlement is fair and reasonable when considered in the context of the litigation risks faced by Plaintiffs, including records produced by Defendants and Defendants' likely difficulty in paying a higher amount. *See Howard v. Don Coleman Adver., Inc.*, No. 16-cv-5060, 2017 U.S. Dist. LEXIS 28080, at *1 (S.D.N.Y. Feb. 28, 2017) ("serious concerns about collectability… militate[s] in favor of finding a settlement reasonable") (internal citations omitted). Due to the several disputed issues of fact, the parties would likely need to engage in substantial motion practice, including 216(b) collective and later class certification, as well as extensive discovery, including numerous depositions, which would consume a tremendous amount of time and resources. Rather than move forward with

Hon. Robert M. Levy
FLSA Settlement Fairness Letter
Page **6** of **6**

lengthy and costly litigation, settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation.

*       *       *       *       *

As demonstrated above, the settlement is a result of substantial negotiations and compromise by both parties. The parties believe that the settlement is completely fair, reasonable, and adequate to the Plaintiffs and respectfully request that the Court approve the Agreement.

We appreciate Your Honor's attention to this matter. Please contact the undersigned counsel for the parties should you have any questions regarding this submission.

Respectfully submitted,


By: */s  Brent E. Pelton*
Brent E. Pelton, Esq.
Taylor B. Graham, Esq.
PELTON GRAHAM LLC
111 Broadway, Suite 1503
New York, New York 10006

*Attorneys for Plaintiffs*

By: */s Richard Gresio*
Gary G. Staab, Esq.
Gary G. Staab LLC
2 William Street, Suite 302
White Plains, New York 10601

Richard Gresio, Esq.
The Law Office of Richard Gresio
7600 Jericho Tpk., Suite 304
Woodbury, New York 11797

*Attorneys for Defendants*


cc:      All counsel (via ECF)

www.PeltonGraham.com